IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AMANDA MCLEOD,

    Plaintiff,

vs.                                        CASE NO. 4:11-cv-496/RS-CAS

STATE OF FLORIDA,
DEPARTMENT OF HEALTH,

    Defendant.
_____/

## ORDER

Before me are Defendant's Motion for Summary Judgment (Doc. 25), Plaintiff's Response in Opposition (Doc. 33), and Defendant's Reply (Doc. 37).

### Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). In other words, the basic issue before the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (*citing Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).  However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

## Background

Defendant employed Plaintiff as an administrative secretary from January 2009 until February 2010.  (Doc. 9, ¶ 6).  In June 2009, Plaintiff was injured at work, and she sought workers' compensation benefits.  *Id*. at ¶ 7.  In October 2009, Plaintiff participated in a Title VII investigation by providing an affidavit in support of co-worker Jacqueline Williams' claim.  *Id*. at ¶ 8.  Plaintiff contends that Defendant retaliated against her for her participation in the investigation and for her workers' compensation claim by requiring that she document previous absences from work.  *Id*. at ¶ 9.

In November 2009, Plaintiff took FMLA leave to care for her herself and for her daughter.  *Id*. at ¶ 10.  During this period, Plaintiff claims that Defendant interfered with her FLMA leave and that she was harassed by Defendant in retaliation for her taking FMLA leave, participating in the Title VII investigation, and filing a workers' compensation claim.  Further, she contends that a January 2010 written reprimand (Doc.

31, Attach. 4) was a form of retaliation.   Plaintiff resigned from her position in February 2010 and claims that this was a constructive discharge.

## Analysis

**Count I: Title VII Retaliation**

Title VII prohibits retaliation against an employee because of her participation in "an investigation, proceeding or hearing."  42 U.S.C. §2000e-3(a).  To establish a prima facie case of retaliation under Title VII, Plaintiff must show (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events.  *Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1363 (11th Cir. 2007).  Here, Defendant concedes that Plaintiff engaged in a protected activity by submitting an affidavit for the Williams investigation.  The only dispute is whether Plaintiff suffered an adverse action, and whether there was a causal relationship.

An adverse employment action is one that is "materially adverse to a reasonable employee or job applicant."  *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006).   The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.  *Id*. at 67.  The "employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 57.

Here, Plaintiff contends that there were two adverse actions—the January 2010 written reprimand and Plaintiff's constructive discharge.  Defendant asserts that the

written reprimand should not be considered as retaliation for the Title VII protected activities because Plaintiff's deposition testimony squarely contradicts her assertion.

The transcript for that deposition indicates that Plaintiff stated that the reprimand was "specifically in retaliation" for her FMLA and workers' compensation leave. (Doc. 37, Exhibit 1, p. 87). Plaintiff did not state that she believed that the reprimand was for her participating in the Title VII investigation. Plaintiff made her beliefs known about the nature of the reprimand in response to three clear questions. *Id.* at p. 67-68, 87.

> Q: Do you claim that that reprimand was in retaliation for your participation in Jacqueline Williams' investigation?
>
> A: I'm not sure.
>
> Q: Okay. Well, I'm just asking—
>
> A: . . . I mean, I think that this written reprimand was in retaliation to my absences for FMLA and workers' compensation, this specific reprimand.
>
> Q: To clarify, that reprimand is in retaliation for your absences for FMLA and workers' compensation?
>
> A: Yes
>
> \*\*\*
>
> Q: . . . Do you claim that the written reprimand was in retaliation for any of the claims you bring in this case, FMLA, workers' compensation or your participation with –
>
> A: Yes
>
> Q: Which ones?
>
> A: The reprimand specifically in retaliation against my family medical leave and my workers' comp leave.

Plaintiff is in the unique position to allege her theory for the reasons the reprimand was issued. Her testimony should be accorded great weight and be viewed in a light that is most favorable to her claim. Even under this most deferential standard, her statement can be read only one way. Plaintiff connects the reprimand only to FMLA and workers' compensation actions and not to Title VII.

Plaintiff offers no evidence besides her testimony and the chronology of events to assert that the January 2010 reprimand was in retaliation for her participation in the Title VII investigation. Plaintiff's Amended Complaint (Doc. 9) makes no mention of the reprimand and does not connect the reprimand to the Title VII claim. Likewise, Plaintiff's Statement of Facts (Doc. 32) and her Affidavit (Doc. 31, Exhibit 19) do not specifically connect the reprimand to her Title VII activities. Plaintiff first ties the two together in her Response to the Motion for Summary Judgment. (Doc. 33, p. 2-3). The Response itself is not evidence.

Because Plaintiff's sworn testimony states her belief that the January 2010 reprimand was in retaliation for FMLA and workers' compensation leave, I find that the reprimand is not an event that can be considered an adverse employment action as it relates to Plaintiff's Title VII claim. This conclusion is not changed by any suggestion that the chronology of events is evidence that the reprimand and Plaintiff's Title VII participation are related. While the reprimand and Plaintiff's Title VII affidavit may have been close in time, this alone does not make a connection between the two reliable. Plaintiff's FMLA leave, for example, occurred closer to the reprimand. It is up to

Plaintiff to allege a correlation between protected activities and employer reprisals, and by her own testimony, Plaintiff did not connect the Title VII activity to the reprimand.

Assuming for the sake of argument that the reprimand is related to Plaintiff's Title VII acts, the reprimand itself is not an adverse employment action. "The reprimand of an employee does not constitute an adverse employment action when the employee suffers no tangible harm as a result." *Summerlin v. M & H Valve Co.*, 167 Fed. Appx. 93, 96-97 (11th Cir. 2006) (unpublished) (*citing Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001)). To be actionable, the reprimand must "have an impact on an important condition of employment, such as salary, title, position, or job duties." *Id*. The reprimand is not actionable because there is no evidence in the record it caused Plaintiff tangible harm.

Turning to the constructive discharge, Plaintiff must show that "the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would have been compelled to resign." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (citation and quotation omitted).

Plaintiff claims that she suffered a series of retaliatory acts which signaled that her discharge was imminent and made the workplace so hostile that she had no choice but to resign. The first evidence that Plaintiff offers of these hostilities is that Defendant asked Plaintiff to provide documentation for her absences even though she had already provided documentation and was on intermittent FMLA leave. (Doc. 32, ¶ 19). Plaintiff claims that it was "wrong and retaliatory" to have originally accepted doctors' notes about absences and then later ask for again for documentation for those same absences.

Defendant claims that requiring Plaintiff to submit medical documentation cannot be considered harassment reaching the level of constructive discharge because the Department of Health's Human Resource Manual expressly states that "employees may be required to submit medical certification for use of sick leave. . . ."  (Doc. 25, Exhibit 12, p.8).  This argument is persuasive.

Providing a doctor's note is common practice and an employee could not reasonably find it objectionable.  *See DaCosta v. Birmingham Water Works & Sewer Bd.*, 256 Fed. Appx. 283, 287 (11th Cir. 2007) (unpublished) (finding that a requirement to bring a doctor's note when ill not an adverse action).  The FMLA allows an employer to require that an employee provide medical certification for a leave request.  29 C.F.R § 825.305 (2009).  An employer may also request recertification every 30 days.  *Id*. at § 825.308.  Having Plaintiff resubmit previously submitted medical documents is not more objectionable than what even the FLMA allows.

The "verbal counseling" Plaintiff received about her absences is likewise unobjectionable.  (Doc. 32, ¶ 27).   While this counseling may have run afoul of FLMA, it would not be reasonable for Plaintiff to believe that her working conditions were intolerable, or even that it dissuaded her from participating in a Title VII claim.  *See Hill v. Winn-Dixie Stores, Inc*., 934 F.2d 1518, 1527 (11th Cir.1991) (requiring working conditions approaching intolerable to find constructive discharge).  *See also Shotz v. City of Plantation*, 344 F.3d 1161, 1182 (11th Cir. 2003) (*citing Davis. V. Town of Lake Park, Fla.,* 245 F.3d 1232, 1242 (11th Cir. 2001).  "Employer criticism, like employer praise, is an ordinary and appropriate feature of the workplace."  *Id.*

Plaintiff's allegations that her supervisor "was loud and abrasive and yelled" at Plaintiff also does not rise to the level of actionable harassment. (Doc. 32, ¶ 22). *See Weaver v. Potter*, 2010 U.S. Dist. LEXIS 60580, *9 (S.D. Ga. 2010) ("The Eleventh Circuit has noted that occasional yelling by a supervisor is not actionable harassment."); *Herawi v. Ala. Dep't of Forensic Scis.*, 311 F. Supp. 2d 1335 (M.D. Ala. 2004)(finding yelling and other comments not sufficient to make hostile environment); *See also Paape v. Wall Data*, 934 F. Supp. 969, 977 (N.D. Ill. 1996) ("Title VII . . . does not operate as a general ban on yelling, swearing, screaming and other rude or offensive behavior.").

Finally, Plaintiff's complaint that she was given tasks with unreasonable deadlines causing her to be "set up to fail" is not actionable. (Doc. 32, ¶50). *See Allen v. Napolitano*, 774 F. Supp. 2d 186, 203 (D.D.C. 2011). These deadlines fall into the category of excessive workload situations where courts have been reluctant to hold that changes in job duties amount to adverse employment action when unaccompanied by any tangible harm. *Davis*, 245 F.3d at 1244. "Changes in assignments or work related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work-hour changes." *Id*. (citation omitted). In sum, Plaintiff has failed to show that she suffered adverse employment actions as a result of her Title VII participation.

Turning to the causation requirement, Plaintiff must come forth with adequate evidence to support a causal connection between the protected activity and the allegedly retaliatory actions. The causal connection prong requires Plaintiff to show that "the decision-makers were aware of the protected conduct, and that the protected activity and

the adverse action were not wholly unrelated." *New v. Darnell*, 2008 U.S. Dist. LEXIS 83857, 19-20 (N.D. Fla. 2008) (*citing Curtis v. Broward County*, 292 Fed. Appx. 882, 885 (11th cir. 2008)).

Plaintiff's arguments concerning causation fail.  First, Plaintiff has not shown that anyone besides herself and Ms. Williams were aware of Plaintiff's participation in Ms. Williams' Title VII action.  Plaintiff "believes that Byrne and Sam DiConcilio . . . where aware of her affidavit."  (Doc. 32, ¶16).  Plaintiff stated at her deposition that it was "*highly likely* that [Byrne] *probably*" saw the affidavit.  *Id*. (emphasis added).  To support her belief, Plaintiff asserts that DiConcilio likely overheard Williams and Plaintiff discuss the Title VII affidavit because Diconcilio's office was across the hall.  (Doc. 32, ¶ 16-17).

Plaintiff's beliefs are not supported by anything beyond mere speculation.  Plaintiff does not relate any specific facts about conversations with Ms. Williams that make it likely they were overheard talking about the affidavit.  Plaintiff does not indicate whether they were speaking loudly or softly, whether Ms. Williams office had a door and, if so, whether it was open, whether Plaintiff's supervisor was in his office during the conversation, and if so, whether he was actively listening, busy working, or with another person.  Filling in these facts could have supported her bare assertion.   Absent any hard evidence, Plaintiff's belief cannot be credited against Defendant's denial that the supervisors had any knowledge of Plaintiff's participation in the Title VII case.  (Doc. 25, Exhibit 4, ¶ 4; Exhibit 13-17, ¶ 4).

Absent proof of knowledge, Plaintiff could meet her burden by showing close temporal proximity between the statutorily protected activity and the adverse

employment action   However, in the Eleventh Circuit, "a three to four month disparity between the statutorily protected expression and the adverse employment action is not enough" to establish causation.   *Thomas*, 506 F.3d at 1363.

Here, Plaintiff completed the affidavit on October 30, 2009, and resigned a little over three months later, on February 1, 2010.  Assuming that the resignation amounted to constructive discharge, this timeframe evidences some possible correlation.  The correlation is not overly persuasive because it falls just beyond the three month mark. And, when considered with the dearth of evidence suggesting actual knowledge of the affidavit by Plaintiff's superiors, it is unconvincing.  *Brungart v. BellSouth Tel., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (finding that temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision-maker did not have knowledge that the employee engaged in protected conduct).

**Count II: FLMA**

To state a claim for FMLA interference, an employee is required to demonstrate by a preponderance of the evidence that she was entitled to FMLA leave and that her employer burdened or denied her that benefit. *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206-07 (11th Cir. 2001); *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. Fla. 2000).  Plaintiff has brought forth sufficient evidence to make it a question for the jury whether Defendant interfered with her FLMA rights.

Plaintiff's FLMA retaliation claim, however, fails for the same reasons set forth above. Plaintiff has not suffered adverse employment actions which amounted to constructive discharge, and the reprimand itself does not qualify as an adverse employment action.

**IT IS ORDERED**:

1. The Motion for Summary Judgment (Doc. 25) is **GRANTED, in part**, and **DENIED**, in part.
2. Plaintiff's Count I Title VII retaliation claim is **DISMISSED with prejudice**.
3. Plaintiff's Count II FLMA retaliation claim is **DISMISSED with prejudice**.
4. Plaintiff's Count II FLMA interference claim may proceed. Likewise, Plaintiff's Count III workers' compensation retaliation claim may proceed because it was not addressed in the Motion.

**ORDERED** on June 5, 2012.

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**